# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**GABRIELI A. DAVIS,**

      **Petitioner,**

**v.**                          **Case No.  3:12cv130/LC/CJK**

**MICHAEL D. CREWS,[1]**

      **Respondent.**

_____/

# ORDER and
# REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed an answer, submitting relevant portions of the state court record.  (Doc. 16).  Petitioner has replied.  (Doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes

_____

[1]Michael D. Crews succeeded Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged by Information filed in the Circuit Court for Escambia County, Florida, Case Number 08-CF-2994, with committing Grand Theft between September 11, 2007, and January 29, 2008. (Doc. 16, Ex. B, p. 1).[2] Petitioner proceeded to a jury trial and, on August 14, 2009, was found guilty as charged, based on the State's evidence that on September 11, 2007, petitioner purchased a Dyson vacuum cleaner for $429.99 at the Commercial Sales register of the Lowe's Home Improvement Center located on Airport Boulevard in Pensacola, Florida. (Exs. E, J). After paying and receiving a receipt, petitioner left this vacuum cleaner at the Commercial Sales area, returned to the vacuum cleaner aisle at the rear of the store, selected another Dyson vacuum cleaner of the same make, model and item number, and placed the second vacuum cleaner into a shopping cart. (Ex. E). Petitioner then proceeded with this second vacuum cleaner to the Lawn and Garden exit at the opposite end of the store and, upon presenting the receipt for the first vacuum to the cashier, left the store and placed the second vacuum cleaner into his vehicle. (Exs. E, J). Petitioner then parked his vehicle directly outside the Commercial Sales door, retrieved the first Dyson vacuum cleaner he had previously purchased, placed it into his vehicle, and left the premises. (Ex. E). One of these vacuum cleaners was later returned to the Lowe's store located on Fairfield Avenue and Mobile Highway for $429.99. (Exs. E, J). All of these events were recorded on store video surveillance which was admitted into evidence at trial, with the exception of petitioner's retrieval

---

[2]All references to exhibits are to those provided at Doc. 16, unless otherwise noted.

of the first vacuum. (Ex. E). Aaron Stone, a loss prevention agent of the Lowe's Airport Boulevard store at the time, was the only witness at trial and testified that he not only saw petitioner leave the store with the second vacuum and place it into his vehicle, but he also saw petitioner reenter the store and retrieve the first vacuum from the Commercial Sales area. (Ex. E). Based on the jury's finding of guilt (ex. E, pp. 156-57; ex. F), the trial court adjudicated petitioner guilty of Grand Theft and sentenced him to forty-eight months imprisonment. (Ex. E, p. 177; Ex. G). Judgment was entered that date – August 14, 2009. (Ex. G).

Petitioner appealed and, through counsel, filed an Initial Brief raising one issue: "The Trial Court Erred In Denying Appellant's Motion For Mistrial". (Ex. K). The Florida First District Court of Appeal ("First DCA") affirmed petitioner's conviction and sentence on June 18, 2010. *Davis v. State*, 37 So. 3d 851 (Fla. 1st DCA 2010) (Table) (copy at Ex. N).

On July 16, 2010, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. O). The motion was stricken as facially insufficient, with leave given to file an amended motion. (Ex. P). Petitioner, through counsel, filed an amended Rule 3.850 motion on January 10, 2011, asserting that trial counsel was deficient for failing to investigate and present witnesses on petitioner's behalf. (Ex. Q). The postconviction trial court held an evidentiary hearing (ex. U), and denied relief (ex. V). The First DCA summarily affirmed, *Davis v. State*, 80 So. 3d 1024 (Fla. 1st DCA 2012) (Table), with the mandate issuing March 12, 2012. (Ex. Z).

Petitioner filed his federal habeas petition in this Court on March 19, 2012. (Doc. 1). Petitioner raises one claim of ineffective assistance of trial counsel

(Grounds One through Three), and one claim of trial court error (Ground Four). Respondent asserts that petitioner is not entitled to federal habeas relief of any of his claims, because the state court's denial of relief on his ineffective assistance claim is consistent with clearly established federal law, and petitioner's claim of trial court error presents a purely state law issue that is not cognizable on federal habeas review, and even if deemed to state a cognizable claim, is procedurally defaulted and without merit. (Doc. 16).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably

extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the

petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

### Grounds One, Two and Three – Ineffective Assistance of Trial Counsel

In petitioner's first three grounds for relief, petitioner claims his trial counsel was constitutionally ineffective for failing to investigate and prepare a defense. Specifically, petitioner asserts that trial counsel:

(1)  failed to secure documents (which petitioner does not describe) and witnesses (whom petitioner does not identify) which would have "supported the position that defendant left the vacuum not paid for and took only the one paid for" (Ground One, Doc. 1, p. 6);

(2)  failed to interview and call as defense witnesses store cashiers who would have contradicted the testimony of State's witness Aaron Stone and would have established "that the vacuum alleged stolen (taken without payment) was actually left with him as <u>damaged</u> and he logged it as such and took to the store's damage/returns" (Ground Two, Doc. 1, p. 8); and

(3)  failed to challenge State's witness Aaron Stone with any cross examination to establish the falsehood of Stone's testimony, failed to

file a pre-trial motion to suppress the store surveillance videotape on the grounds that it was "incomplete", and waited until sixteen hours before trial to depose State's witness Aaron Stone (Ground Three, Doc. 1, p. 9).

Petitioner asserts that he exhausted these issues in state court in his Rule 3.850 proceeding. (Doc. 1, pp. 7, 8, 10). In his counseled amended Rule 3.850 motion, petitioner asserted that trial counsel was ineffective for failing to interview three cashiers at Lowe's (the cashier in the Commercial Sales department and the cashier in the Lawn and Garden department at the Airport Boulevard store, as well as the cashier at the Fairfield Avenue store who processed petitioner's return). Petitioner's amended Rule 3.850 motion asserted that the identities of the cashiers could be readily ascertained from the receipts, and that the cashiers would support petitioner's version of events, which was as follows:

9. Prior to trial, the defendant advised his trial counsel of the following. On September 11, 2007, the defendant entered the Lowe's Airport store through the Lawn and Garden department which was close to where he had parked his automobile. Because he did not have his Tax I.D. number, the cashier at the Lawn and Garden department told him that he would have to make his purchase at the commercial sales cashier at the front of the store. The purchase of the vacuum cleaner was for the benefit of the True Love Community Baptist Church of which the defendant was the Pastor. The defendant selected a Dyson brand vacuum cleaner and proceeded to the commercial sales cashier. The item was rung up by the cashier and purchased by the defendant. Before leaving the cashier, the defendant noticed that there was a cut opening in the box containing the vacuum cleaner and could detect that the item was damaged. When the damage was observed by the cashier, he told the defendant that he could go select another identical vacuum. The defective vacuum was left with the commercial sales cashier. Because the defendant had parked his vehicle by the Lawn and Garden department it was agreed that after he selected a replacement vacuum he would be allowed to exit through the Lawn and Garden department exit.

The commercial sales cashier told the defendant that he would call the Lawn and Garden cashier to advise her of what had occurred and that the defendant would be coming through her exit. After the defendant picked up the replacement vacuum he proceeded to the Lawn and Garden checkout. When he arrived the cashier was on the phone and the defendant presumed it was with the commercial sales cashier because she asked him if he was Mr. Davis. He acknowledged his identity and showed her his receipt and left with the vacuum and went to his vehicle and departed the area. The next day the defendant noticed that the vacuum he had left the store with was also damaged. He called the Lowe's Airport store and was advised that they had no undamaged Dyson vacuums at that store and he was advised to check with the Fairfield Lowe's location. Upon arrival he was informed that because the particular vacuum was not purchased at that store he could not do an exchange, but could receive a refund on the vacuum and purchase another one. This is what the defendant did and the cashier assisting him a the Fairfield Lowe's marked the vacuum he returned as defective. The defendant was unaware of any issues with the aforementioned transactions until his arrest on June 18, 2008.

(Ex. Q, pp. 58-59 ¶ 9). Petitioner asserted that the only evidence that he re-entered the Lowe's Airport store (after leaving the Lawn and Garden exit) and retrieved the first Dyson vacuum from the Commercial Sales area was the testimony of Mr. Stone. Petitioner asserted that before trial, he apprised his attorneys of the following facts: (1) the Commercial Sales cashier at the Airport Boulevard store could establish that petitioner did not depart from the store with the first vacuum, (2) the Lawn and Garden cashier at the Airport Boulevard store could establish that she had communicated with the Commercial Sales cashier concerning what transpired with the first vacuum, and (3) the cashier at the Fairfield Avenue store could establish that petitioner did not merely return a defective vacuum for which he received a refund, but used the refund to purchase another identical Dyson vacuum. (Ex. Q, p. 60 ¶ 10).

Petitioner asserted that these witnesses were available to be subpoenaed for trial, and that their testimony "would have contradicted the evidence presented by the State." (*Id.*).

The state postconviction court held an evidentiary hearing on petitioner's ineffective assistance claim (ex. U), and denied relief in a written order which identified *Strickland* as the controlling legal standard. The state court recited petitioner's factual allegations – the same allegations recited above – and denied relief as follows:

> The State's position at trial was that Defendant, having paid for only one vacuum, returned into the store after leaving through the Lawn and Garden exit with the second vacuum to retrieve the first vacuum cleaner from the commercial sales area. Defendant asserts that he told his counsel that the "commercial sales cashier could establish that he did not depart from the store with the first defective vacuum," the "Lawn and Garden cashier could establish that she had communicated with the commercial sales cashier regarding what had transpired with the first defective vacuum," and the "cashier from the Fairfield Lowe's location could establish that the defendant did not merely return a defective vacuum for which he received a refund, but used the refund to purchase another identical Dyson vacuum" If counsel had investigated his claims and located these three individuals in order to present their testimony at trial, defendant asserts that he would have been found not guilty at trial.

> "[T]he defendant has the burden to prove a claim of ineffective assistance of counsel at an evidentiary hearing on a Rule 3.850 motion. Once the defendant presents evidence to support the claim, however, the State has a burden to present contradictory evidence." Pennington v. State, 34 So. 3d 151, 154 (Fla. 1st DCA 2010). At evidentiary hearing, Defendant presented <u>no</u> direct evidence as to what the witnesses in question would have testified to at trial, other than his own assertions regarding what he <u>believes</u> they would have said had they been called. The Court does not find this sufficient to support the granting of

postconviction relief. Because Defendant has failed to produce any direct, credible evidence to what the three cashiers would have testified to at trial, Defendant has failed to meet the prejudice prong of the <u>Strickland</u> test, and he is not entitled to relief on this basis.

(Ex. V, p. 200). The First DCA summarily affirmed.

    A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. A petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 2473, 91 L.Ed.2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.

The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

### B. Federal Review of State Court Decision

The First DCA summarily rejected petitioner's claim on the merits. The First DCA's decision is due deference under 28 U.S.C. § 2254(d). *See Richter*, 131 S. Ct. at 784-85; *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1402, 179 L. Ed. 2d 557 (2011). Under § 2254(d)(1), the question is whether the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The state court's decision was not contrary to clearly established federal law, because the state court identified and properly applied the *Strickland* standard. *See, e.g., Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) ("[T]here is no merit to [petitioner's] argument that the state court's decision was contrary to clearly established federal law because the state court utilized the *Strickland* standard."). Further, petitioner does not argue, and the record does not suggest, that the facts of this case are materially indistinguishable from the facts in *Strickland*. The only question before this Court is whether the state court's application of *Strickland* was objectively unreasonable.

Because the First DCA's decision was summary in nature, petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that

'there was no reasonable basis' for [its] decision." *Cullen*, 131 S. Ct. at 1402 (*quoting Richter*, 131 S. Ct. at 786). The duty of a federal habeas court in these circumstances is clear and was clearly restated by the Supreme Court in *Cullen*: "[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Cullen* at 1402 (*quoting Richter*, 131 S.Ct. at 786). Petitioner fails to meet that high threshold.

The state circuit court's order, which is the only reasoned state opinion addressing petitioner's claim, rejected petitioner's claim on *Strickland*'s prejudice prong. The state court found as fact that petitioner presented no direct, credible evidence of what the three cashiers' trial testimony would have been, and that petitioner's testimony of what <u>he believed</u> the cashiers would say was speculative and not credible. The state court's findings of fact are presumed correct. 28 U.S.C. § 2254(e); *see also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (*quoting Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983)); *see also Consalvo*, 664 F.3d at 845 ("We consider questions about the credibility and demeanor of a witness to be questions of fact."). Petitioner has not proved by clear and convincing evidence that the state court's factual findings were incorrect. 28 U.S.C. § 2254(e)(1).

Based on the state circuit court's findings, it was not unreasonable for the court to conclude that petitioner failed to carry his burden of establishing a reasonable probability that the cashiers would have testified as he believed they would and that the result of his trial would have been different had counsel called the cashiers to testify. *See Hunt v. Comm'r, Ala. Dep't of Corr.*, 666 F.3d 708, 725 (11th Cir. 2012) (rejecting ineffective assistance claim based on counsel's failure to cross-examine State's witness about an alleged agreement between the witness and the State and about the witnesses' criminal history, where petitioner presented no evidence at his state postconviction evidentiary hearing of an agreement between the witness and the State, nor did he produce evidence that counsel's further probing of the witness' criminal history would have revealed anything significantly more damaging to the witness' credibility than the information already brought out at trial; "Ultimately, Hunt presented nothing to the Alabama courts that would have justified a finding of prejudice."); *Powell v. Allen*, 602 F.3d 1263, 1275 (11th Cir. 2010) (rejecting ineffective assistance claim based on counsel's failure to raise an intoxication defense where defendant failed to come forward with supporting evidence on collateral review); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("[Petitioner] offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (*quoting Aldrich v. Wainwright*, 777 F. 2d 630, 636 (11th Cir. 1985)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a federal habeas petitioner is not entitled to an evidentiary hearing or federal habeas relief on his ineffective assistance claim where the claim is conclusory); *see also, e.g., Duran v. Walker*, 223 F. App'x 865, 875 (11th Cir. 2007) (rejecting as conclusory and

speculative federal habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness at trial to testify regarding the effects of paint fumes on petitioner's mental state at the time he gave statements to police and that such testimony would have made the jury more inclined to disregard petitioner's statements to police; "Duran's claim that an expert witness would have prompted the jury to believe his testimony and disregard the statements he made during the police interview is conclusory and speculative, and does not amount to a showing a prejudice."). The First DCA reasonably rejected petitioner's ineffectiveness claim for petitioner's failure to establish prejudice under *Strickland*.

Further, although the state postconviction trial court rested its decision on petitioner's failure to establish prejudice, the First DCA could have reasonably denied relief on the additional, or alternative ground that petitioner failed to show deficient performance under *Strickland*. At the state postconviction evidentiary hearing, the State presented the testimony of the two assistant public defenders who worked on petitioner's case. Ms. Dosher represented petitioner from late January of 2009 until early May of 2009 (ex. U, pp. 132, 135), and Mr. Pfeiffer represented petitioner from that point through trial. (*Id*. p. 150). Ms. Dosher testified that petitioner told her early on that he thought they should depose the officers listed in the police report: Mr. Porritt and Mr. Brodie. (*Id*., p. 133). Mr. Porritt was the loss prevention officer at the Lowe's Airport Boulevard store who provided the information contained in the police report. (Ex. A, pp. 3-4). Mr. Brodie was identified in the police report as the "reporting officer" with the Pensacola Police Department. (*Id*., p. 4). Ms. Dosher testified that petitioner also requested that she talk to the cashiers and get the surveillance videotape "because his defense was, no, he just bought that one vacuum

cleaner", and "[t]he video was a crucial thing to see what the video showed." (Ex. U, p. 133). Ms. Dosher subpoenaed Mr. Brodie and Mr. Porritt for depositions. Mr. Brodie failed to appear for his deposition. (*Id*., pp. 133-34). Mr. Porritt revealed in his deposition that he did not observe any of the crime personally – his only knowledge of the incident was what he learned by viewing the surveillance video. (*Id*., p. 138). Ms. Dosher asked Mr. Porritt during his deposition if he could identify the names of the cashiers, but he could not identify them. (*Id*., p. 134). Mr. Porritt did mention Aaron Stone as another loss prevention agent who might have relevant information about the incident. (*Id*., p. 145). Ms. Dosher directed her investigations department to speak with Mr. Stone to find out what he knew and to attempt to identify the cashiers. Mr. Stone was unable to identify the cashiers. (*Id*.). Ms. Dosher made a strategic decision to rely on the investigator's "detailed memo" of what Stone told the investigator, instead of deposing Stone, because counsel believed the information contained in the memo "was essentially . . . just as good" as the information she would learn by deposing Stone. (*Id*., p. 148). In addition, early in the case on March 4, 2009, Ms. Dosher had asked the prosecutor about Mr. Stone and the prosecutor had responded "[W]e're not going [to] call him as a witness. We don't need him." (*Id*., p. 145).

Ms. Dosher further explained with regard to her investigation of the cashiers, that all of her sources of information – the prosecutor, the police report and the loss prevention officer – implied that everything was captured on the store's surveillance videotape. (*Id*., p. 138). Ms. Dosher "was waiting to get that video before [she] delved too deeply into finding those witnesses [the cashiers] because [she] was afraid of what they would be able to produce." (*Id*., pp. 138-39). Ms. Dosher did not think

identifying the cashiers was significant in terms of trial strategy, because their knowledge concerning petitioner's purchase of one vacuum cleaner did not appear to help the defense:

> A. [Ms. Dosher]. Our trial strategy – the allegations from the State, essentially, were that he paid for one vacuum cleaner, took two. So the cashiers were only going to be able to testify that he paid for a vacuum cleaner, which is what the State was admitting. So I didn't find them to be particularly helpful. I didn't think it was gong to help any. And if – actually, it could have hurt us because they may have remembered, perhaps, Mr. Davis taking the second one. I didn't want them to, you know, bring that up to loss prevention or the State to hear about that. I didn't want to hurt Mr. Davis. That was my theory, But I did look into it because I wanted to try to talk to them myself, first, but we weren't able to find them.

(*Id.*, p. 136).

Mr. Pfeiffer, petitioner's other defense counsel, testified at the postconviction evidentiary hearing that when he inherited the case, he learned that the investigator had tried to identify the cashiers but was unable to. Mr. Pfeiffer discussed trial strategy with petitioner, including the significance of the surveillance videotape and the cashiers. Mr. Pfeiffer explained:

> A. I remember there was this ongoing issue about a video that nobody could ever seem to get ahold of. And I know we [Mr. Pfeiffer and petitioner] talked about that, how we're still trying to get the video.
>
> Q. [The State]. Okay. And did you talk to [petitioner] about the significance of the video?
>
> A. Yes. We were – the video – at the time what I thought was that the whole alleged crime was on the video. So, obviously, once we got the video, we could look at it and either, yes, you did do it, or, no, they can't prove it. So it was very significant.

Q.  Okay.  Did you discuss with [petitioner] any witnesses that he wanted you to find?

A.  We did talk about the clerks.  He mentioned, you know, us finding those.  I don't remember exactly – I don't remember precisely what we discussed about it.  I remember it coming up, though.

Q.  Okay.  Did you discuss with him that Ms. Dosher had tried to find those clerks?

A.  Yes, I heard she had our investigator try to determine who they were. He wasn't able to.

. . .

Q.  Did you ever discuss with him trial strategy, not using those cashiers?

A.  I did because by the time we got to the trial – actually, my trial strategy up until almost when the trial happened was again we were waiting on this video, the video was either going to just confirm or deny everything.

    When we finally – when I finally got the video, which I think was literally a week before trial, maybe days, the video showed the first three parts of the incident, but didn't show the actual crime, which would be him coming and picking up the second, or the original vacuum cleaner.

    And, at that time, I had not taken, yet taken the deposition of Mr. Stone.  And so, at that point, I'm thinking it's not on the video like they said it was, nobody saw it so there's no case.  They're not going to have a case.

Q.  So you felt like the State would not have a case, regardless?

A.  Based on what I had up until almost the last minute, yes.

Q. Okay. And when you got the video, did that change your strategy?

A. No, because it showed – it did not show that last part of the incident, which would have been what the crime was, what changed my – well, I guess, what changed my strategy was when we took the deposition of Mr. Stone, which was the day before the trial and he said – and this is the first time we had heard this, that he actually saw it with his own eyes. So, at that point, I knew that he was going to come in and testify and say I saw that part even though it was not on video.

Q. So did you think those cashier – did you want to use those cashiers as part of your strategy?

A. I didn't.

Q. And why did you not want to use them?

A. It's a rule of logic called trying to prove a negative. You can not prove something didn't happen. And I thought even if we had the cashiers come in an say, no, he didn't come back and pick it up, then all the prosecutor would have had to do was say, well, this was two years ago, correct, and isn't [it] possible that you just don't remember or that it was another cashier? So I didn't think it really had any value to it.

Q. So your trial strategy did not involve the cashiers and you felt comfortable going to trial with that?

A. Correct.

(*Id.*, pp. 151-54).

In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In view of the heavy showing necessary to succeed on a claim that counsel performed

deficiently with respect to an uncalled witness, and the deference that must be afforded to counsel's strategic decisions, on this record petitioner has not shown that it would have been unreasonable for the First DCA to conclude that he failed to establish deficient performance. Counsel expressed a reasonable strategy regarding the defense, the decision to curtail further investigation of the cashiers' identities, and the decision not to call the cashiers as witnesses. As counsel explained, up until shortly before trial, both the prosecution and the defense considered the videotape to be the crucial and only evidence in the case. Defense counsel strategized that if the videotape had captured everything, it would be decisive evidence of petitioner's guilt and not reasonably capable of rebuttal by the cashiers' testimony. If the videotape had not captured everything – which is what came to be true as the video failed to capture petitioner picking up the original vacuum at the Commercial Sales area – the State would be unable to prove its case and the defense would not need to present testimony from the cashiers. (*See* Mr. Pfeiffer's postconviction testimony at Ex. U, p. 168 (explaining that if the videotape did not show all the elements of the crime as the State contended it would, the defense would not need the cashiers' testimony to attempt to disprove something the State failed to prove in the first place.)). Counsel investigated Mr. Stone early in the case but reasonably decided not to depose him based on the investigator's detailed notes and the prosecutor's representation that he would not be calling Mr. Stone as a witness because he did not need him. (*Id*., p. 145). It was not until the week of trial that the State changed its mind and announced its intent to call Mr. Stone. Defense counsel deposed Stone and it was then that the defense first learned that Stone would testify he saw petitioner return to the Commercial Sales area and take the original vacuum cleaner after having already taken the second vacuum from the Lawn and Garden exit. (*Id*., p. 168).

Petitioner's postconviction counsel argued at the evidentiary hearing that had the defense investigated the cashiers at that point and had the cashiers testified as petitioner said they would have, their testimony could have been used to discredit Mr. Stone's testimony. However, as Ms. Dosher pointed out, the State, through cross-examination, could have diminished the significance of the cashiers' testimony by simply asking them if it was possible they were not in the area at the particular time petitioner returned and took the original vacuum, or their memories failed. Defense counsels' conclusion that the cashiers' testimony (as petitioner proposed it) was of little, if any value to the defense, was reasonable. There is at least a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," with respect to their trial strategy. *See Harrington*, 131 S.Ct. at 785.

The state court's denial of relief on petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of, the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Grounds One, Two or Three.

Ground Four – Trial Court Error

Petitioner's remaining claim is that "The Court erred when it didn't call a mistrial when the state violated the motion." (Doc. 1, p. 11). Petitioner alleges the following in support of this claim:

> The state's witness was forewarned before testifying to the limits of his testimony but willfully violated it. The state present the excuse that he misunderstood the question. The Court allowed the prosecutor to go out in the hallway <u>ALONE</u> with the witness for over five (5) minutes and then bring him back in an question him on his reason for the violation. The witness merely RESTATED <u>100%</u> of what the prosecutor had told the Court. Proof that he had been <u>COACHED</u>! The Court erred when it didn't allow a continuance based on a discovery violation. The state knew from January 27, 2009 that there was only one eye-witness but chose not to list him in discovery until four (4) days

before trial in an effort to gain a tactical advantage and deny defendant
a chance to prepare a rebuttal to his testimony.

(*Id*.).  Petitioner's claim is directed to two distinct instances of alleged error:  (1) the
trial court's denial of the defense's motion for mistrial and (2) the trial court's denial
of the defense's pre-trial motion for continuance.  Petitioner asserts that he exhausted
these issues by presenting them in his direct appeal.  (*Id.*, pp. 11-12).

Respondent asserts that the only claim petitioner presented on direct appeal
was that the trial court erred in denying the defense's motion for mistrial – a motion
that was based on a pre-trial stipulation prohibiting the State or its witnesses from
introducing any testimony as to what the witness viewed on the video surveillance
footage, without introducing the footage itself.  Defense counsel argued that the State
violated the stipulation when Mr. Stone testified that petitioner's retrieval of the
original vacuum cleaner was captured on the video footage (when in fact it was not).
Respondent asserts that petitioner's direct appeal did not raise the issue of a mistrial
being warranted due to the prosecutor's alleged coaching of a witness or the trial
court's denial of petitioner's pre-trial motion for a continuance based on an alleged
discovery violation.  (Doc. 16, pp. 23-24).  Accordingly, the latter two sub-claims of
Ground Four are procedurally defaulted, and the only claim subject to federal habeas
review is petitioner's claim that the trial court erred when it denied the defense's
motion for mistrial based on a violation of the pre-trial stipulation.

A.     Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must
exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

§ 2254(b)(1),[4] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

 (A)  the applicant has exhausted the remedies available in the courts of the State; or

 (B) (i)  there is an absence of available State corrective process; or

  (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

. . . .

(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

The record establishes that petitioner, through counsel, raised one issue on direct appeal: "The trial court erred in denying appellant's motion for mistrial." (Ex. K). Petitioner presented these facts in support of his claim: (1) during Stone's direct testimony the prosecutor asked Stone why the video did not show petitioner picking up the original vacuum cleaner and Stone erroneously replied: "That particular incident was recorded on video, it was not included in this case file"; (2) defense counsel immediately moved for a mistrial on the grounds that the testimony violated

the pretrial motion in limine; (3) the prosecutor admitted that the video did <u>not</u> record petitioner's picking up the original vacuum and, after talking to the Mr. Stone concluded that Mr. Stone's statement was a mistake; (4) defense counsel's motion for a mistrial was erroneously denied even though a curative instruction was given to the jury; and (5) the prosecutor was allowed to rehabilitate Stone in front of the jury. (Ex. K, p. 8). Petitioner's appellate counsel argued that the trial court abused its discretion in denying the motion for mistrial, because: (1) inadvertently or not, the prosecutor violated the pretrial motion in limine, (2) the jury was forever tainted by Stone's improper testimony because once it heard Stone's erroneous testimony there was no way for the jury to erase it from its memory, and (3) the error was harmful. (*Id.*, p. 8 and pp. 10-13). Petitioner's direct appeal brief did not raise the issues of the prosecutor allegedly improperly "coaching" Mr. Stone or of the trial court denying the defense's pre-trial motion for a continuance. Petitioner's failure to present these issues to the state appellate court renders them procedurally defaulted for federal habeas purposes. Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of his claims of trial court error arising from the denial of a motion for mistrial based on improper coaching of a witness and denial of motion for continuance based on the State's discovery violation.

B.   Petitioner's Challenge to the State Court's Denial of his Motion for Mistrial Fails to State a Claim Cognizable on Federal Habeas Review

The only aspect of Ground Four that petitioner presented to the First DCA on direct appeal is his claim that the trial court erred when it denied his motion for mistrial based on the State's violation of the pre-trial stipulation (that witnesses would not testify to events captured on the videotape without the particular videotape

footage being introduced into evidence). Even liberally construing petitioner's petition, this claim presents a purely state law issue. Petitioner does not advance a federal claim in Ground Four, or even mention federal law or the United States Constitution. Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 479, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Because petitioner merely challenges the state court's interpretation of Florida law and does not plead a federal constitutional violation, Ground Four is not cognizable under federal habeas review. Federal habeas relief may be denied on this basis.

Even if this Court liberally construed petitioner's federal habeas petition together with his reply as raising a federal constitutional challenge to the denial of his motion for a mistrial, (*see* Response to Respondent's Response at doc. 21, p. 2 ("Petitioner's claims are that he was denied his "FEDERAL CONSTITUTIONAL RIGHTS" and thus the hearing of such and the ruling of such is justly heard and ruled on in a Federal Court Setting")), petitioner would not be entitled to federal habeas review of his claim because he failed to present the federal constitutional dimension of his claim to the state court in his direct appeal. Petitioner's initial brief on direct appeal made no mention of federal law or the United States Constitution. Petitioner's argument was based exclusively on state law, and petitioner's sole source of legal

authority was state law. (Ex. K, p. 10 (*citing Cole v. State*, 701 So. 2d 845 (Fla. 1997) and *Palmer v. State*, 486 So. 2d 22 (Fla. 1st DCA 1986), for the proposition that the trial court's ruling on the motion for mistrial was subject to Florida's abuse of discretion standard of review)). Petitioner's failure to exhaust the federal constitutional aspect of his claim in state court renders his claim procedurally defaulted on federal habeas review. Petitioner makes none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Four.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Michael D. Crews has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Gabrieli Andre Davis* in the Circuit Court for Escambia County, Florida, Case Number 08-CF-2994 be DENIED, and the Clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of October, 2013.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).